**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-21-00243-CR**
**NO. 09-21-00244-CR**
**NO. 09-21-00245-CR**

_____

**RONNIE DEE HAIL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause Nos. 19-05-06437-CR, 19-05-06438-CR, 19-05-06439-CR**

**MEMORANDUM OPINION**

A grand jury indicted Ronnie Dee Hail for three counts of possession of child pornography, a third-degree felony. *See* Tex. Penal Code Ann. § 43.26(a), (d). In an open plea, Hail pled guilty and elected to have the trial court determine punishment. Following a punishment hearing, the trial court sentenced him to five years of incarceration on each count to run concurrently. In four issues, Hail complains his

1

trial counsel was ineffective during the punishment hearing. For the following reasons, we will affirm the trial court's judgment.

## Background

During the punishment hearing, Detective Cody Arnold of the Montgomery County Precinct 4 Constable Office's Internet Crimes Against Children Task Force testified regarding their investigation. Arnold explained that after they received a "cyber tip" and arrived to execute a search warrant at Hail's home, Hail willingly talked to them several times without an attorney and submitted to recorded interviews. Arnold testified about what Hail told him, but the recordings of those interviews were not introduced into evidence during the punishment hearing. The State wanted to discuss the contents of the video interviews with Arnold, which included discussions of extraneous offenses Hail committed twenty to thirty years ago. Hail's trial counsel objected that the State had not complied with the notice requirements for the extraneous offenses, so the State should not be allowed to go into those. The trial court sustained the defense's objection.

Arnold testified that Hail admitted to viewing child exploitation material. Arnold believed the children in the images Hail viewed were between seven and eight years old. Arnold further testified that Hail admitted to being aroused when he viewed the images and said he looked at the images of children every day.

Upon cross examination, Arnold agreed there was no evidence that Hail downloaded or uploaded images on the computer, only that he viewed child pornography. Arnold also agreed that Hail was cooperative during the investigation. Arnold then testified Hail did not admit he was looking at child pornography, instead Hail explained that images of children came up when he looked at nudist sites. When questioned further, Arnold confirmed that Hail claimed to be a nudist, and when he looked at nudist sites, sometimes things popped up, but he did not actively look for pornography; however, at times Hail was aroused by the images, but Arnold also testified that Hail told him that he was always aroused.

Special Agent Jeffery Chappell with Homeland Security also testified and was the assigned computer forensic analyst. Chappell testified that when they executed the search warrant, they found images of child exploitation material. Chappell described the forensic analysis he performed on the seized devices and testified that when he analyzed Hail's computer, he located approximately 132 images of child exploitation material. He recovered "parsed search queries" that the computer user put into the search engine.

Chappell described the three images the charges were based on.[1] Chappell also discussed two exhibits based on his forensic analysis, one that included the

[1]During Chappell's testimony, the State sought to introduce thirteen images, including the three photographs that were the basis of the charges plus ten others located on Hail's computer. Defense counsel did not object to the three photos the

pornographic URLs he located on Hail's device and another that listed Hail's search history, including searches for child exploitation material. Chappell described "well-known" child pornography sites in Hail's browser history, explaining that Hail visited the sites and what Hail searched for while there. Chappell explained that "LS Magazine is a title of series of child sexual exploitation material, images and videos, child pornography dating back to the early 2000s[,]" which had photos of "children as young as three and old as maybe 15." Chappell testified that based on his forensic analysis, he had no doubt that Hail sought out images of child sexual exploitation material.

Chappell testified there was a search for a nudist video. Chappell confirmed he was familiar with the practice of nudism and had become familiar with that practice through several federal investigations "involving claims of self-proclaimed nudism as a potential defense to the cases." Chappell testified that based on his analysis, other than the search terms and some of the images he found, he found no other evidence that Hail participated in or researched anything considered legitimate nudism or practices. Chappell said he has experience where defendants charged with possession of child pornography claim they are nudists to mitigate the charge, and in his opinion, that defense did not hold up in this case or in others. Chappell testified

charges were based on but objected to the admission of the ten others, which the trial court ultimately admitted under seal and over the defense's objection.

4

regarding some of his research on nationally and internationally recognized nudist organizations from prior cases and explained that one of the organizations noted in its mission statement that "while they recognize the sexual nature of human beings, nudism in and of itself is not a sexual act." Chappell also testified that based on his investigations, if a person was looking at the images and saying they were aroused by them, that would not be consistent with basic tenets of nudism.

On cross-examination, Chappell agreed that much of Hail's searches had to do with nudism but testified that "a vast majority had girls – LS Model associated with it." Chappell also agreed that pop ups can occur, but "these were not pop ups."

Trial counsel called two witnesses, both co-workers of Hail, to testify on Hail's behalf during the hearing. The first witness was Patrick Brady, the owner of a construction company that has employed Hail for fifteen to twenty years. Brady testified that Hail is a supervisor, and he relies heavily on him. Brady described Hail as "one of the nicest guys" and provided examples of how good he was to co-workers. Brady testified he was aware Hail had been charged with child pornography, believed it was wrong to look at child pornography, and people who do so should be punished. Brady did not believe that someone should go to prison if they did not make child pornography but only looked at it. Brady did not believe that Hail was fit for prison life and did not believe he deserves it. Brady said that Hail's health had declined since this happened and felt it would decline further if Hail went

to prison. Brady could not think of a more reliable employee and felt Hail could follow whatever restrictions the court placed on him. Even after the prosecutor provided Brady with details of Hail's offenses, Brady testified that did not change his opinion about whether Hail should go to prison.

The defense's next witness was Christopher New, a project manager from the same construction company. Hail's trial counsel asked New about his criminal history, and Hail's counsel stated he believed they had similar criminal histories. New responded, "I got [an] MIP in college. That's the extent of my criminal run-ins." New testified he works with Hail and was aware Hail had been charged with child pornography. New was shocked by the charge and described Hail as a "mild-mannered, soft-spoken guy" who worked hard. New said Hail would be very difficult to replace if he went to prison, and they rely on him. New believed that if someone is charged and convicted of child pornography, they should be punished. New believed Hail would follow any restrictions the judge placed on him. After the prosecutor provided New with details of Hail's offenses, New said he still did not feel as if he could determine what punishment would be appropriate.

The State requested seven years on each count and sought to stack Hail's sentences, which Hail's trial counsel opposed and instead asked for probation. The trial court denied the State's motion to stack and sentenced Hail to five years of incarceration on each charge to run concurrently.

Hail filed a Motion for New Trial complaining that the verdict was "contrary to the law and the evidence." In that Motion, Hail explains that the court heard testimony regarding his conversations with law enforcement, but the videotapes of those conversations were not admitted into evidence even though they were the "best evidence" of the conversations. He submitted these videos with the Motion. Hail's trial counsel provided an affidavit in support of the Motion for New Trial, in which he averred the recorded conversations were a key part of the State's case and were provided to him during discovery. He further averred that

> while I have no recollection of any inconsistencies, if there had been I would have first asked the witness about the inconsistencies, if they denied it then I would have asked for a chance to refresh the witness's recollection, and if they continued the denial, I would have admitted the exhibit.[2]

The Motion for New Trial does not mention Chappell's testimony or New's criminal history. The record does not indicate the trial court held a hearing on the Motion for New Trial. The trial court granted the Motion to include the videos in the record but denied the Motion for New Trial.

---

[2] During the hearing, Hail's counsel objected when the State sought to discuss contents of these interviews, because they contained discussions of Hail's extraneous bad acts that the State had not properly provided notice of.

**Standard of Review**

To prevail on a claim of ineffective assistance of counsel, an appellant must meet a two-pronged test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). *Strickland* requires an appellant to show a reasonable probability that, but for his counsel's errors, the outcome of his trial would have been different. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). If the deficient performance relates to punishment, then prejudice depends on a reasonable probability that the sentencer would have assessed a more lenient punishment absent the errors. *Swinney v. State*, Nos. PD-0216-21, PD-0217-21, 2022 WL 610977, at *1 (Tex. Crim. App. Mar. 2, 2022) (citing *Strickland*, 466 U.S. at 695). A reasonable probability is one sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694. Failure to meet either *Strickland* prong is fatal to an ineffective assistance of counsel claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

"Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance." *Bone*, 77 S.W.3d at 833 (citation omitted). Appellant must prove there was no plausible professional reason for specific acts or omissions of his counsel. *Id.* at 836. "'[A]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.'" *Thompson*, 9 S.W.3d at 813 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). Because the reasonableness of counsel's decisions and strategy often involves facts that do not appear in the appellate record, the record on direct appeal is usually insufficient to support an ineffective assistance claim. *Id.* at 813–14. However, "when no reasonable trial strategy could justify the trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as [he] did." *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005) (citing *Strickland*, 466 U.S. at 690).

## Analysis

In complaining that his trial counsel was ineffective, Hail argues that trial counsel performed deficiently: (1) by failing to correct false impressions being presented to the trial court; (2) by failing to object to testimony which the witness

was not qualified to provide as an expert witness; (3) by eliciting testimony from a character witness of otherwise inadmissible prior convictions; and (4) the cumulative effect of the deficient performance prejudiced him.

The record is silent as to why appellant's trial counsel took or failed to take the complained-of actions. *See Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). Generally, trial counsel should be afforded the opportunity to explain his actions before being denounced as ineffective. *Bone*, 77 S.W.3d at 836; *see also Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021). Hail's Motion for New Trial only argues the videos were the "best evidence" of Hail's conversations with investigators and fails to raise any of the specific deficiencies he complains of on appeal. The record does not show that trial counsel had an opportunity to respond to the alleged deficiencies Hail now raises. *See Johnson*, 624 S.W.3d at 586; *Bone*, 77 S.W.3d at 836. We strongly presume counsel rendered reasonable professional assistance. *See Ex parte Saenz*, 491 S.W.3d 819, 828 (Tex. Crim. App. 2016) (citations omitted) (noting line of cases abiding by the *Strickland* principle of a strong presumption that counsel's conduct was reasonable). Based on the totality of this record, we conclude that Hail failed to establish trial counsel's performance fell below an objective standard of reasonableness, and we therefore determine Hail has failed to satisfy the first prong of *Strickland*. *See Rylander*, 101 S.W.3d at 111.

Hail also argues that counsel's deficient performance prejudiced him. Even if we agreed Hail met the first prong of *Strickland*, which we do not, he has failed to show how any of trial counsel's alleged deficiencies would have probably resulted in a different outcome. *See Bell v. State*, 90 S.W.3d 301, 307 (Tex. Crim. App. 2002) (noting that even if counsel's failure constituted deficient performance, appellant made no showing of how the error prejudiced him); *Wyatt v. State*, 889 S.W.2d 691, 694 (Tex. App.—Beaumont 1994, no pet.) ("[A]ppellant makes no attempt at showing how any of the alleged deficiencies of trial counsel would have probably resulted in a different outcome[.]"). His brief contains a generic statement that each of the alleged deficiencies prejudiced him independently and cumulatively but nothing else to show how the purported deficiencies impacted his punishment. The trial court sentenced Hail to less time than the State requested on each count and denied the State's request to stack the sentences. We conclude Hail has also failed to meet *Strickland's* second prong.

Since Hail failed to meet either *Strickland* prong, we overrule issues one through four. Having overruled Hail's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on August 4, 2022
Opinion Delivered August 17, 2022
Do Not Publish
Before Golemon, C.J., Kreger and Johnson, JJ.

11